* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms with some modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-trial agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The Phoenix Insurance Company was the carrier on the risk for Defendant-Employer on the date of the alleged injury and until July 30, 2000.
3. The alleged date of injury and/or occupational disease is July 1, 2000.
4. An employer/employee relationship existed between Plaintiff and Defendant-Employer at all relevant times.
5. The Form 22 Wage Chart in connection with this case indicates an average weekly wage of $355.47, and a compensation rate of $236.98. *Page 3 
6. Pursuant to a previous Opinion and Award dated August 27, 2004, Plaintiff's claim was deemed compensable, and Plaintiff was paid temporary total disability benefits from July 1, 2000 through August 28, 2000, and from August 24, 2001 through November 29, 2001.
7. The parties stipulated to a Pre-trial Agreement and Employment Security Commission records. Additionally, the Full Commission Opinion and Award dated August 27, 2004, and the record upon which that Opinion and Award was based, are incorporated by reference into this record.
8. Following oral arguments before the Full Commission on June 14, 2007, the parties amended Stipulation Number Two (2). Defendants now stipulate without objection from Plaintiff that after July 30, 2000, The Phoenix Insurance Company became the carrier for Defendant-Employer again on April 12, 2002, and remained the carrier through the last day Plaintiff worked for Defendant-Employer.
 * * * * * * * * * * * ISSUES
1. Defendants' issues are:
a. Whether Plaintiff is or has been disabled since July 24, 2003, as a result of her compensable occupational disease or injury by accident, where she returned to work with no medical restrictions, and where she left work due to an economic layoff?
b. If so, whether Defendants are entitled to a credit for unemployment benefits paid to Plaintiff, pursuant to N.C. Gen. Stat. § 97-42.1
(2007)?
c. Whether Plaintiff retains any permanent and/or partial disability as a result of such injury or disease? *Page 4 
2. Plaintiff's issues are:
 a. Whether Plaintiff is currently disabled as a result of her compensable occupational disease or injury by accident?
 b. If so, whether Plaintiff is permanently and totally disabled as a result of such injury or disease?
 * * * * * * * * * * *
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Deluca on September 28, 2005, Plaintiff was 56 years old, having a date of birth of February 20, 1949. She has a ninth (9th) grade education. Plaintiff worked for Defendant-Employer from 1986 to October 2003. Prior to working for Defendant-Employer, Plaintiff worked for Burlington House Furniture from the 1970's until 1986.
2. Plaintiff's job title at Defendant-Employer was filler/glaze wiper in the Finishing Room. In that position, Plaintiff frequently used her hands with force, and engaged in various repetitive motions with her hands.
3. Pursuant to an Opinion and Award of the Full Commission issued on August 27, 2004, the Full Commission determined that Plaintiff contracted the occupational diseases of recurrent bilateral carpal tunnel syndrome and rotator cuff/supraspinatus tendonosis of her right shoulder due to causes and conditions characteristic of and peculiar to her employment with Defendant-Employer, and that these were not ordinary diseases of life to which the general public, not so employed, is equally exposed. *Page 5 
4. Pursuant to the same Opinion and Award, the Full Commission found that Plaintiff suffered a specific traumatic incident to her neck that materially aggravated her preexisting degenerative disc disease and cervical spondylosis on or about May 1, 2000.
5. Plaintiff was out of work due to her compensable claims from July 1, 2000 through August 28, 2000, and from August 24, 2001 through November 29, 2001.
6. Also, pursuant to the previous Opinion and Award, Plaintiff received temporary total disability benefits from July 1, 2000 through August 28, 2000, and from August 24, 2001 through November 29, 2001.
7. As found in the prior Opinion and Award, Dr. Ranjan Roy released Plaintiff to return to work on November 5, 2001 with the restrictions of no lifting more than 20 pounds, and of limiting the elevation of her arm above shoulder level for a period of three (3) months. Defendant-Employer made work within those restrictions available to Plaintiff. During those three (3) months of light duty, Plaintiff worked in the office bagging screws. This job was a regular job offered to other employees and was available at multiple plants.
8. Dr. Roy assigned no work restrictions after March 2002. By March 2002, Plaintiff returned to work in her regular job as a filler/glaze wiper in the drawer line at Plant 12 with no restrictions.
9. The regular duties of the job of filler/glaze wiper did not require Plaintiff to lift greater than 20 pounds or to elevate her arm above shoulder level.
10. After her release to return to work without restrictions, Plaintiff returned to Dr. Stephen Furr, one of her treating physicians in June 2002 complaining of right arm, shoulder and neck pain. Plaintiff reported that the pain progressed during the workday and interfered with her sleep. Plaintiff returned to Dr. Furr again on July 29, 2002, August 19, 2002, and September 30, *Page 6 
2002 complaining of shoulder and neck pain. The September 30, 2002 treatment was the last medical treatment Dr. Furr provided to Plaintiff prior to entry of the August 27, 2004 Opinion and Award for the Full Commission.
11. Plaintiff remained in essentially the same job position of filler/glaze wiper and satisfactorily performed the job for more than 18 months until her permanent layoff in October 2003. At the time of her layoff, Plaintiff did not have any assigned work restrictions from a physician. Defendant-Employer transferred Plaintiff from Plant 12 to Plant five (5) in the spring of 2003, and as a result, Plaintiff moved from the drawer line to the table line. Plaintiff's job at Plant five (5) had the same physical requirements, and did not involve either lifting over 20 pounds or elevation of the arms above shoulder level.
12. The Full Commission finds that Plaintiff's testimony that she was unable to work as fast as her co-workers and unable to complete her job in the "normal" fashion does not establish she was incapable of performing the job or that her wage earning capacity was diminished. Plaintiff admitted that Defendant-Employer laid her off for economic reasons, rather than due to medical restrictions, and that she would have continued to work if Defendant-Employer had not laid her off from work.
13. On October 15, 2003, Defendant-Employer permanently laid off Plaintiff, along with numerous other co-workers, due to economic conditions. This layoff was the result of a significant decline in Defendant-Employer's business.
14. After certifying that she was able to work, Plaintiff collected unemployment benefits in the amount of $226.00 per week from October 18, 2003 through March 27, 2004. In April 2004, Plaintiff again certified that she was able to work, and collected unemployment benefits of $123.00 per week from April 25, 2004 through November 28, 2004. Plaintiff received *Page 7 
the maximum amount of unemployment benefits to which she was entitled. Plaintiff testified that although she believed she could not work, she looked for work two to three times a week as a requirement to continue receiving unemployment compensation. However, at the hearing Plaintiff was only able to name two places where she had sought employment and she did not name any places where she sought work in response to Defendants' interrogatories.
15. In addition to unemployment benefits, Plaintiff had the opportunity to obtain her general equivalency diploma (GED) free of charge. Plaintiff acknowledged that she was aware of this opportunity, but chose not to take advantage of it.
16. Dr. Stephen Furr signed a Form 28U on February 4, 2004 certifying Plaintiff could no longer work. This Form 28U was not an appropriate remedy as the period allowed by statute for a trial return to work had expired. Also, the Full Commission finds that Dr. Furr's signing of the Form 28U after not treating Plaintiff since September 2002, and without examining Plaintiff, is not competent evidence on Plaintiff's wage earning capacity. Dr. Furr admitted that he must have completed the Form 28U because Plaintiff asked him to, that he did so with "Mrs. Carter's blessing," and that he had no knowledge of her physical condition at the time he signed the Form 28U. At the time Dr. Furr signed the Form 28U, Plaintiff was certifying to the Employment Security Commission that she was able to work. Plaintiff did not complete the "Employee" section of the Form 28U where the employee explains the reasons claimed for no longer being able to work.
17. After September 30, 2002, Plaintiff did not seek actual treatment from Dr. Furr again until October 6, 2004. At that time, Plaintiff's chief complaint was bilateral hand pain and numbness. Plaintiff reported that the pain and numbness went from her neck all the way down her fingers. Dr. Furr's impression was that Plaintiff had cervical arthritis with the possibility of *Page 8 
upper extremity radiculopathy and possible exacerbation of her carpal tunnel syndrome bilaterally. At his deposition Dr. Furr testified that he felt Plaintiff had some radiculopathy relating to her previous cervical spine problems and had continued possible exacerbation of her carpal tunnel syndrome. Dr. Furr recommended that Plaintiff undergo a computed tomography (CT) myelogram to evaluate the neck for nerve impingement, and that Plaintiff undergo bilateral upper extremity EMG's to evaluate nerve damage. It appears from the record that the CT myelogram was not done until November 7, 2005.
18. Dr. Furr interpreted the cervical myleogram with CT to show nothing acute and possibly nothing chronic pressing on the nerve that would produce hand symptoms. The EMG indicated that Plaintiff had symptoms consistent with carpal tunnel syndrome. Dr. Furr also reviewed a medical note of Dr. Riggan from February 9, 2004, which indicated that Plaintiff had recurrent carpal tunnel syndrome but surgery was not recommended. When Plaintiff's complaints of hand, shoulder and neck pain persisted through her medical visit on December 7, 2005, Dr. Furr referred her to Dr. Jeffrey A. Baker, a hand specialist, because he felt she might need surgery to release scar tissue.
19. Dr. Furr opined and the Full Commission finds as fact (consistent with the prior Opinion and Award of August 27, 2004) that Plaintiff's job with Lexington Furniture "was repetitive enough that she would be more likely to have carpal tunnel syndrome of. . . both of her hands than the general population". . . . He was also of the opinion that continuing the job activities would exacerbate Plaintiff's symptoms. When asked whether he had any knowledge of what brought on Plaintiff's carpal tunnel syndrome between September 2002 and the time he saw her in October 2004, Dr. Furr opined that if Plaintiff continued to do the same work then "the activity of work between September of 2002 and the layoff of October 2003 was a significant *Page 9 
contributing factor, or the factor, or only factor unless there was some mitigating circumstance that occurred between October 2003 and February 2004" when Dr. Riggan saw her. There is no evidence of record that Plaintiff had any event or activity that would have affected her hands between her layoff and the time she saw Dr. Riggan in February 2004.
20. With respect to whether Plaintiff's symptoms in 2004 and 2005 after she stopped working after her layoff are related to her work for Defendant-Employer, Dr. Furr was of the opinion that if Plaintiff was doing repetitive work up to October 2003 and stopped, hopefully the symptoms would have improved, but he cannot prove or disprove that her symptoms would have waned enough for her to be back at baseline. He opined that in February 2004, the symptoms were more likely related, but in 2005, when Plaintiff saw him, the symptoms were less likely to be related.
21. Dr. Furr is not of the opinion that Plaintiff is unable to perform any type of work.
22. On June 8, 2006, Dr. Jeffrey Baker, a specialist in upper extremity and spinal surgery, examined Plaintiff. Dr. Baker testified that Plaintiff had symptoms of carpal tunnel syndrome and he also suspected pronator syndrome, which is the entrapment of the median nerve at the elbow. He testified that persons who do repetitive lifting or repetitive flexion and extension of the forearm often develop pronator syndrome, which is caused by the motion of turning the forearm from palm up to palm down, utilizing the pronator muscle, and that people who do this specific activity throughout the day develop pronator syndrome. He ordered an EMG to better evaluate her cervical spine and hand and to rule in or rule out pronator syndrome. Dr. Baker never obtained the EMG and never saw Plaintiff thereafter.
23. The Full Commission gives great weight to the testimony of Dr. Baker. However, the evidence of record is insufficient to support a finding that Plaintiff performed the motions *Page 10 
associated with contracting pronator syndrome throughout the day in her employment with Defendant-Employer or that Plaintiff has pronator syndrome since no EMG was done.
24. Dr. Baker further testified that carpal tunnel syndrome and pronator syndrome are not related, because they involve entirely different areas of entrapment. Pronator syndrome is distinct and unrelated to Plaintiff's cervical problems or carpal tunnel syndrome.
25. Plaintiff's claim for compensation due to pronator syndrome is a new claim and Plaintiff has the burden of proving compensability. The Full Commission finds that Plaintiff has failed to prove that she contracted pronator syndrome as a result of her work duties with Defendant-Employer. The Full Commission further finds that there is insufficient evidence in the record to establish that Plaintiff developed pronator syndrome as a direct and natural consequence of her prior compensable injury or occupational disease.
26. Dr. Baker further testified that Plaintiff has degenerative changes in the cervical spine, based upon his review of magnetic resonance imaging (MRI). Dr. Baker did not give an opinion on whether the degenerative changes were the result of Plaintiff's prior spinal surgery.
27. Dr. Baker had no knowledge of Plaintiff's specific job duties for Defendant-Employer, and rendered no opinion on whether Plaintiff was able to work, or in what capacity.
28. Plaintiff's continuing job duties with Defendant-Employer contributed to the exacerbation of her bilateral carpal tunnel syndrome symptoms for which she required medical treatment or significantly contributed to the recurrence of her bilateral carpal tunnel syndrome. Plaintiff's job duties placed her at an increased risk over the general public for developing bilateral carpal tunnel syndrome.
29. The medical treatment Plaintiff received for conditions related to her cervical spine and bilateral carpal tunnel syndrome was causally related to her compensable injury and *Page 11 
occupational disease and was reasonably required to effect a cure, provide relief or lessen her disability.
30. Based on the greater weight of the evidence Plaintiff has failed to prove any work-related disability after she was laid off from work in October 2003.
31. The prior Opinion and Award filed on August 27, 2004 found compensable Plaintiff's occupational diseases of bilateral carpal tunnel syndrome, rotator cuff/supraspinatus tendinosis of the right shoulder, and aggravation of pre-existing degenerative disc disease and cervical spondylosis. The Opinion and Award reserved for subsequent determination Plaintiff's permanent partial disability, if any, from these conditions, and this claim is, therefore, still open.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In a prior Opinion and Award dated August 27, 2004, the Full Commission determined that Plaintiff sustained a compensable specific traumatic incident resulting in injury to her neck and a compensable occupational disease of bilateral carpal tunnel syndrome. Plaintiff returned to work on November 29, 2001 and worked until she was laid off in October 2003 for economic reasons. Thereafter Plaintiff sought medical treatment for carpal tunnel syndrome symptoms, which she contends prevented her from working as of February 2004. The evidence establishes that Plaintiff's job duties exacerbated her carpal tunnel syndrome symptoms, or contributed to the development of and placed her at an increased risk of contracting recurrent carpal tunnel syndrome. In either event, Plaintiff's carpal tunnel syndrome is causally related to her work. N.C. Gen. Stat. §§ 97-2(6); 97-53(13). *Page 12 
2. Since Plaintiff returned to work in November 2001 and worked without restrictions from March 2002 through October 15, 2003 when she was laid off along with numerous other co-workers, due to economic reasons, Plaintiff has not proven any incapacity to earn pre-injury wages during a period of more than 18 months immediately preceding her layoff. The evidence establishes that Plaintiff's failure to earn wages with Defendant-Employer after October 15, 2003 is not due to disability, but is the result of her layoff due to a reduction in work force resulting from a decrease in Defendant-Employer's business. N.C. Gen. Stat. § 97-2(9) (2007). Segovia v. J. L. Powell Co.,167 N.C. App. 354, 608 S.E.2d 557 (2004).
3. Plaintiff has failed to prove that she was medically incapable of working after her layoff due to her carpal tunnel syndrome or her cervical condition, or that she made a reasonable effort to find work but was unsuccessful due to her compensable conditions or that seeking employment would be futile. Russell v. Lowes Prod. Distributing,108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Plaintiff failed to prove that she contracted an occupational disease of pronator syndrome due to causes and conditions related to her work, or that her work duties placed her at an increased risk over the general public not so employed of contracting this condition. N.C. Gen. Stat. § 97-53(13) (2007). Rutledge v. Tultex Corp./King's Yarn,308 N.C. 85, 301 S.E.2d 359 (1983).
5. Evidence that Plaintiff returned to work without restrictions is not sufficient to rebut the "Parsons Presumption." Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997). In Parsons, the North Carolina Court of Appeals held that where a claimant previously proves the condition of a particular body part is causally related to a compensable accident, a presumption arises that any future medical condition affecting that body part is causally related *Page 13 
to the original compensable claim, and is, therefore, also compensable.Id., 126 N.C. App. 540, 542 485 S.E.2d 867, 869. In this case, although Plaintiff was able to work without restrictions, the medical evidence indicates that she continued to suffer from symptoms related to carpal tunnel syndrome, as well as neck pain. The medical evidence also establishes that Plaintiff's work activities either exacerbated her symptoms and Defendants have not rebutted the Parsons presumption, or caused recurrent carpal tunnel syndrome, which is also a compensable condition. Defendants are obligated to pay for any medical treatment for Plaintiff's compensable conditions, which is reasonably necessary to effect a cure, give relief, or lessen Plaintiff's disability from these compensable conditions. N.C. Gen. Stat. §§ 97-25, 97-25.1.
6. The medical treatment Plaintiff has received from Dr. Furr and Dr. Baker since entry of the prior Opinion and Award has been reasonably required to effect a cure, provide relief or lessen her disability from her compensable injuries covered by the prior Opinion and Award and the exacerbation or recurrence of her carpal tunnel syndrome due to continuing to perform her work activities. N.C. Gen. Stats §§ 97-2(19);97-25.
7. Plaintiff failed to establish, by the greater weight of the evidence, that she is permanently and totally disabled. N.C. Gen. Stat. § 97-29.
8. Plaintiff has presented no evidence on whether she retains any permanent or partial disability as a result of her compensable injury and occupational disease claims, which were left open in the prior Opinion and Award. N.C. Gen. Stat. §§ 97-31, 97-30.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following: *Page 14 
 AWARD
1. Plaintiff's claim for additional compensation for disability due to bilateral carpal tunnel syndrome, as well as her cervical conditions covered under the August 27, 2004 Opinion and Award, is hereby DENIED.
2. Plaintiff's claim for compensation for disability due to recurrent carpal tunnel syndrome is DENIED.
3. Plaintiff's claim for continuing medical treatment for her carpal tunnel syndrome and her compensable cervical condition is GRANTED. Defendants shall pay for all medical treatment Plaintiff has received or may receive in the future for her carpal tunnel syndrome and compensable neck condition.
4. Plaintiff's claim for compensation for pronator syndrome as an occupational disease is DENIED.
5. Defendants' stipulations concerning coverage are hereby admitted into evidence and added to the end of the Transcript Exhibit pages.
6. Defendants shall pay the costs.
This the __ day of December 2008.
 S/________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/________________________ LAURA KRANIFELD MAVRETIC *Page 15 
COMMISSIONER
 S/________________________ DIANNE SELLERS COMMISSIONER *Page 1